# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AVERY REIL, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-18-2233 |
| MICHAEL MUIR, *Facility Administrator,* JOHN CODD,[1] | * | |
| CATHY GRANT, *Case Manager,* | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending is Maryland inmate Avery Reil's pro se Complaint filed pursuant to 42 U.S.C. § 1983, alleging that he was denied access to the courts. Defendants, Michael Muir, Facility Manager, and Cathy Grant, Case Manager, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 10. Reil filed a Motion to Deny Summary Judgment or Deny the Motion to Dismiss, with his declaration (ECF No. 13 at 3), and subsequently filed a Motion for Summary Judgment and a Motion for a Jury Trial. ECF No. 14, 18. Defendants filed an opposition to Reil's Motion for Summary Judgment. ECF No. 15.

After considering the submissions, the Court finds a hearing is unnecessary to resolve the issues. *See* Loc. R. 105.6 (D. Md. 2018). For reasons to follow Defendants' Motion will be treated as a Motion for Summary Judgment and granted. Reil's Motion to Deny Summary Judgment or Deny Motion to Dismiss, Motion for Summary Judgment, and Motion for a Jury Trial will be denied.

---

[1] John Codd has retired, and service was not obtained for him. ECF No. 8. Had service been obtained, the claims against him would be unavailing for reasons set forth in this Memorandum Opinion.

## BACKGROUND

Reil was incarcerated at Eastern Correctional Institution in Westover, Maryland, at the time he filed this Complaint on July 20, 2018. He has been transferred since to another facility. ECF No. 17. His allegations are based on incidents that occurred at ECI.

In his Complaint, he alleges that he is indigent and unable to pay for postage for mail, and that certified mail he sent on March 6, 2018, was returned to him on March 9, 2018, with a note that read, "you do not have enough money in your account to mail out the certifieds [sic]: non-sufficient funds." Compl. ECF No. 1 at 3. Reil states he then wrote to his case manager, John Codd, to obtain "additional postage for my legal mail as DCD 250-1 says to do." *Id.* Reil states Codd never answered his letter. When Reil spoke to Codd on May 2, 2019, Codd informed him that he "knew nothing about this rule." *Id.* That same day, Reil sent an informal complaint to the head case manager, Ms. Grant, and asked her how to have his legal mail approved for postage.

Reil alleges that he has had mail sent back to him "several times" for insufficient postage. *Id.* He does not explain the nature of these items or when they were returned. Rather, he invites the Court to look at the ECI mail log, which is not in the record. *Id.*

Reil filed Administrative Remedy Procedure (ARP) request ECI-A-0063-18 about his concerns. He received a response that informed him he did not qualify for postage for certified mail, but he could be approved for first class postage for his legal mail. Reil claims the delay in providing postage to him has required that he sell his food to obtain funds to timely send his legal mail and amounts to cruel and unusual punishment. *Id.* Reil seeks damages and asks for injunctive relief to have the Division of Correction enforce its own mail policies and to retrain case management staff regarding these policies. *Id.*

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Id.* at 247–48. The opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson*, 477 U.S. at 248–49.

The argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id.* "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt [the moving party's] version of the facts for purposes of

ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). On a motion for summary judgment, the court considers the facts in the light most favorable to the non-moving party, drawing all justifiable inferences in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009).

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). A court must, however, also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

## DISCUSSION

Defendants argue that they are entitled to dismissal or summary judgment on several grounds including: failure to exhaust administrative remedies; failure to state a constitutional claim; respondeat superior; and qualified immunity. In support of their dispositive motion, Defendants have filed verified exhibits and declarations. Reil's cross-motion for summary judgment argues without supporting details that there is no genuine dispute of material fact at issue and that Defendants have been deliberately indifferent to their own policies and rules in violation of his right to due process and access to the courts. ECF No. 14 at 1.

4

## I. Exhaustion of Administrative Remedies.

Defendants argue that Reil did not properly present his claims through the ARP process before filing this lawsuit; therefore, the claims must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Def. Memo, ECF No. 10-1 at 7.

Reil signed his complaint on July 12, 2018, and the envelope bears a date stamp for July 18, 2018. ECF 1 at 5; ECF 1-1. As noted, the Court received the Complaint on July 20, 2018.

On March 10, 2018, Reil submitted ARP-ECI-A0063-18, asserting that his right to access to the courts was being violated because he was indigent and unable to send certified mail on March 6, 2018, due to insufficient funds. He added that his state habeas corpus petition was required to be sent by certified mail. ECF No. 10-3 at 5.[2] The ARP was assigned to Captain Kiser and, after investigation, he recommended dismissing the ARP for lack of merit. ECF No. 10-3 at 8. The ARP was dismissed by Facility Administrator Muir as the Warden's designee on April 2, 2018, for the following reasons:

> Upon review of documentation, it has been determined that there is no evidence to substantiate your claim. You failed to obtain verification from your case manager indicating that your documents were of a legal nature or the court's mandates that it must be sent as certified mail prior to sending it to the mailroom. No approval for the required expense of sending it as certified mail was obtained and you lacked the necessary funds in your account to pay for the expense to send your mail certified, as such the mail was returned to you with a written notification as to why it was returned.

ECF No. 10-3 at 5-7, 9.

---

[2] Reil does not provide additional information about the habeas petition in the Complaint. On March 3, 2015, Reil was found guilty by a jury in the Circuit Court for Harford County of second degree burglary and related offenses and sentenced on April 15, 2016, to 15 years of incarceration with five years suspended. *State v. Reil*, Case No. 23-K-15-000683 (Cir. Ct. Harford Cty.). On January 4, 2019, the Circuit Court for Harford County held a post-conviction hearing in the case. The hearing has been continued to August 5, 2019. Notably, Reil filed the Petition in that case on March 26, 2018, shortly after his March 6, 2018, mail was returned to him. *See* http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=12K15000683&loc=56&detailLoc=ODYCRIM (visited May 24, 2019).

5

Reil filed IGO No. 20180896 on May 29, 2018, as a grievance appeal from the disposition of ARP-ECI-A0063-18. Declaration of Samiyah Hassan. ECF No. 10-2 ¶ 3. At the time Reil filed the Complaint in July of 2018, the grievance was pending before the IGO. *Id.* ¶ 3 (stating as of September 26, 2018, the grievance was under review in the IGO).

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Battle v. Ledford*, 912 F.3d 708, 711 (4th Cir. 2019). "[U]nexhausted claims cannot be brought in court." *Meyers v. Clarke*, _ F. App'x _, 2019 WL 1568626 (4th Cir. April 11, 2019) (quoting *Jones v. Bock*, 549 U.S. 199, 211(2007)).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (noting that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is

designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").

Exhaustion is mandatory and, therefore, a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, __U.S.__, 136 S. Ct. 1850, 1856–57 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")); *see Jones*, 549 U.S. at 220. An inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729. The court, however, is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In *Ross*, the Supreme Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" 136 S. Ct. at 1855. The Fourth Circuit explained the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore*, 517 F.3d at 725.

7

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Reil must comply with the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The Supreme Court has outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are (1) when the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is so "opaque" as to be "practically speaking, incapable of use"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Reil does not assert the ARP process was unavailable to him. ECF No. 1, 13.

In Maryland, the Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 *et seq.*; Code Md. Regs. 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against ... official[s] or employee[s] of the Division of Correction."

8

Corr. Servs. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC]...against any officials or employees of the [DOC]...arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008).

To pursue a grievance, a prisoner confined in a Division of Correction (DOC) facility may file with the Inmate Grievance Office ("IGO") a grievance against any DOC official or employee. C.S. § 10-206(b). However, if the DOC institution has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. See C.S. § 10-206(b); *see also* OPS.185.0002.02. Further, DPSCS has established an administrative remedy procedure process that applies to DOC facilities. OPS.185.0002.02.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). C.S. § 1-101(k) defines a managing official "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. DCD # 185-003VI. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's

9

Deputy Secretary for Operations or that official's designee. OPS.185.0002.05C(2). For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. DCD # 185-004VI.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002:05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B; *see also* DCD 185-002, § VI(N)(1). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

A dismissal order constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code, Title 10 of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

In his opposition, which was filed with a declaration, Reil states he received a letter from the IGO on August 3, 2018, stating his grievance was received on May 22, 2018. ECF No. 13 at 4. He posits that because he received the IGO's letter "outside the 30 days they had to respond as required according to the Code of Maryland Regulations (COMAR)," his administrative remedies are exhausted. *Id.* As noted above, if the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); COMAR 12.07.01.05. Contrary to Reil's assumption, however, Maryland regulations do not require the IGO to issue a decision on the grievance appeal within thirty days of filing, and Reil's administrative remedies were not exhausted when he filed the Complaint. ECF 1 at 5; ECF 1-1. Accordingly, Reil's claims are subject to dismissal for failure to exhaust administrative remedies.

Further, even if Reil had exhausted his claims, they would not prevail for reasons below discussed.

## II. Access to the Courts

To bring a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish the violation of a constitutional right or federal law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*,

11

430 U.S. at 825 (1977; *see Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

A deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). The Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.

Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost due to denial of access to the courts. More particularly, to state a claim that delay or nondelivery of legal mail deprived him of meaningful access to the courts, a prisoner must allege adverse consequences resulted from the delay or non-delivery. *Pearson*, 345 F. Supp. 2d at 519 (citing *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989)). Actual prejudice in this context refers to concrete harms such as the inability to meet a filing deadline or the inability to file a claim at all. *See, e.g., Lewis*, 518 U.S. at 349; *Strickler*, 989 F.2d at 1383 n.10.

In his opposition, Reil asserts that he tried to file "a state habeas corpus a few times, and none of the courts" had received the filings. ECF No. 13 at 2. Reil states the deadline for filing was October 18, 2016. *Id.* Reil asserts Defendants "can pick when" to let him challenge his conviction by way of a post conviction petition. *Id.* Importantly, Reil does not assert that he actually missed a filing deadine[3] or provide evidence for this Court to assess whether the petition contained arguable, nonfrivolous claims to show he suffered actual injury. Absent an allegation of actual harm, he has not established a viable claim for denial of access to the courts.

---

[3] As noted, Reil filed a petition for post conviction relief in the Circuit Court for Harford County several days after the incident at issue here. *Supra* n.2.

### III. Violation of Policy, Procedures and Regulations

If Reil intends to raise a due process claim based on alleged violations of policies, procedures, and state regulations in responding to his postage concerns, his claim is likewise without merit. State regulations do not provide a basis for a due process violation. *Weller v. Dept. of Soc. Services*, 901 F.2d. 387, 392 (4th Cir. 1990); *see also Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If the state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").[4]

### CONCLUSION

For the reasons set forth above, the Court will by separate Order grant Defendants' Motion for Summary Judgment (ECF No. 10) and deny Plaintiff's Motion to Deny Summary Judgment (ECF No. 13), Plaintiff's Motion for Summary Judgment (ECF No. 14) and Plaintiff's Motion for a Jury Trial. (ECF No. 18). Summary judgment will be entered in favor of Defendants.

Dated this 28 day of May, 2019.

FOR THE COURT:

James K. Bredar
Chief Judge

---

[4] Having found no constitutional violation, the Court need not address Defendants' other affirmative defenses, including qualified immunity.

13